No. 3--96--0093

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1997

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) for the 14th Judicial Circuit

 ) Henry County, Illinois,

Plaintiff-Appellee, )

 )

v. ) No. 94--CF--234

 )

CHRISTOPHER A. SWEBORG, ) Honorable

 ) Jay Hanson,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

The defendant, Christopher A. Sweborg, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1994)) and unlawful possession of cannabis (720 ILCS 550/4(b) (West 1994)).  He was sentenced to six months in the county jail, a concurrent term of 30 months' probation and a $500 drug assessment.  On appeal, he contends that the trial court erred in denying his motion to suppress.  We find that the defendant's motion to suppress should have been granted because defendant did not consent to a search of the trunk and there were no articulable facts justifying the officer's search of the trunk.  

Facts

Just after midnight on September 12, 1994, the defendant's car was stopped by a police officer because one of its tail­lights was not illuminated.  The officer informed the defendant of the reason for the stop and asked the defendant to wait with him inside the officer's car.  The defendant exited his vehicle and walked toward the police car.  At that time, the officer asked the defendant if he could search the defendant's person.  The defen­dant said he could, and the officer proceeded to pat down the defendant and to go through all the defendant's pockets.  The pat down revealed no weapons or unlawful substances.

Inside the police car, the officer initiated a check of the defendant's driver's license.  From the check, he learned that the defendant was required to wear corrective lenses.  Since the defendant was not wearing glasses, the officer questioned him about whether he was wearing contact lenses.  The defendant attempted to show the officer his contacts, at which time the officer noted that the defendant's eyes appeared "glassy, glossy and bloodshot."  Based upon this observation, the officer asked the defendant if there was any open alcohol or cannabis in the defendant's car.  The defendant said, "No."

The officer then asked the defendant for permission to search the interior of the defendant's car.  The defendant gave that permission.  The officer searched the entire interior of the defendant's car--the back seat area, the front seat area and the glove compartment.  He found only a small vial with brown-colored liquid in it which the defendant explained was incense.

After searching the interior of the car, the officer asked the defendant for permission to search the car's trunk.  At the hearing on the motion to suppress, the defendant testified that the officer asked him what he had in the trunk and he replied that his guitar case and guitar were in the trunk.  When the officer asked if he could search the trunk, the defendant testified that he said, "No.  I really don't want you to."  The defendant testified that he protested again once the trunk was opened, saying, "I thought I told you I didn't want you to look through my personal items."  The officer testi­fied that the defen­dant con­sent­ed to a search of the trunk.

Upon opening the trunk, the officer noted the presence of the defendant's guitar case.  He opened the case and found the defendant's guitar and another smaller compartment with a fliptop lid.  When the officer attempted to open the compartment, the defendant reached in and clasped his hand on top of the compartment, effectively preventing the officer from opening the lid.  According to the defendant, he told the officer, "I thought I told you that I didn't want you to look through my personal items."

The officer then asked the defendant what was in the compartment and the defendant answered that there were just personal items inside.  The officer asked the defendant if there were any weapons in the compartment and the defendant replied that there were not.  After inquiring about the contents of the compartment, the officer told the defendant to take his hand off the compartment and back away from the officer.  The defendant did so.  Then, despite defendant's previous protests, the officer opened the compartment and found a baggie containing a green leafy substance later deter­mined to be canna­bis and a closed tin box with eight square pieces of perforated paper containing LSD.  At that time, the officer arrested the defendant.

The trial court found that the defendant had consented to the search of the interior of the vehicle and the search of the trunk.  It found, however, that the defendant revoked his consent to search when the officer attempted to open the closed compartment within the guitar case.  Nevertheless, the court concluded that the officer was justified in opening the compartment to protect himself.  The court therefore denied the defendant's motion to suppress.

The defendant argues first on appeal that the trial court erred in denying his motion to suppress.  He urges us to hold that the entire search of the vehicle--both the interior of the passenger compartment and the trunk--were invalid.  We find, however, that we need not examine the validity of the entire search because we hold that the officer was not justified in searching the trunk of defendant's vehicle.

Analysis

As a general matter, where there is no real question regarding the facts, determinations of probable cause should be reviewed 
de
 
novo
.  
Ornelas v. United States
, 517 U.S. ___, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996); 
People v. Easley
, 288 Ill. App. 3d 487, 680 N.E.2d 776 (1997).  
Where more than one inference may be drawn from the facts, however, the question remains one for the trier of fact.  
People v. Besser
, 273 Ill. App. 3d 164, 652 N.E.2d 454 (1995).  The trial court's determination concerning factual matters, including the reasonable inferences to be drawn from the testimony, is entitled to deference (
Ornelas
, 517 U.S. ___, 134 L. Ed. 2d 911, 116 S. Ct. 1657; 
People v. Luckett
, 273 Ill. App. 3d 1023, 652 N.E.2d 1342 (1995); 
Besser
, 273 Ill. App. 3d 164, 652 N.E.2d 454), and this determination will not be disturbed on review unless manifestly erroneous (
People v. Free
, 94 Ill. 2d 378, 447 N.E.2d 218 (1983); 
People v. Hamilton
, 251 Ill. App. 3d 655, 622 N.E.2d 130 (1993)).  It is only when neither the facts nor the credibility of witnesses is questioned that 
de
 
novo
 review is appropriate.  
People v. Moore
, 286 Ill. App. 3d 649, 676 N.E.2d 700 (1997).  Because the defendant raises questions of fact and challenges the credibility of witnesses, 
de
 
novo
 review is inappropriate here.  Based on these cited cases, this court must give deference to the trial court's finding of fact and reverse its determination only if it is manifestly erroneous.

Consent

The fourth amendment of the United States Constitution is designed to protect people from unreasonable searches and seizures.  U.S. Const., amend. IV.  The scope of police conduct is limited during traffic stops for minor traffic violations.  
People v. Hood
, 265 Ill. App. 3d 232, 638 N.E.2d 264 (1994).  An investigatory stop of a vehicle for a minor traffic violation is considered a 
Terry
 stop and is limited by the rules governing 
Terry
.  
People v. Stewart
, 242 Ill. App. 3d 599, 610 N.E.2d 197 (1993).  A 
Terry
 stop contemplates a brief intrusion, as minimal as possible, to verify information or to ascertain whether criminal activities have in fact taken place.  
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In the case at bar, after thoroughly searching the interior of the car, the police officer testi­fied that he asked the defendant what was in the trunk.  The defendant replied that his guitar case and guitar were in the trunk.  When the officer asked if he could search the trunk, defendant replied, "No.  I really don't want you to."  The officer, on the other hand, testified that the defendant consented to a search of the trunk.

The trial court, faced with conflicting testimony regarding the verbal exchange, reasoned that the defendant gave his consent when he told the officer how to remove the keys from the ignition.  This, we find, is reversible error.  The court erred in attributing to defendant's actions acquiescence and consent to a search of the trunk.  The evidence showed that the officer had difficulty removing the keys from the car's ignition and began shaking it.  Defendant's response was simply to tell the officer to push a button under the steering wheel to release the keys.  Defendant's statement to the officer regarding the release mechanism of the ignition cannot be construed as consent to search the trunk.

It is evident from the trial transcript that the court gave great relevance to defendant's statement regarding the keys.  Having decided there was no way to prove exactly what was said between the defendant and the officer regarding consent to search the trunk, the court stated:

"So we'd have to go to the actions, and here -- and I realize a young man and a police officer in a uniform, there's an element here of coercion, but the Courts have ruled that just the uniform isn't coercion, which may be somewhat unrealistic, but I think that's the law.  

At any rate, Mr. Sweborg helped with the keys.  He, I believe, consented to the search of the trunk area."

Ornelas
 dictates that the reasonable inferences drawn by the trial court are entitled to deference by the reviewing court unless they are manifestly erroneous.  
Ornelas
, 517 U.S. ___, 134 L. Ed. 2d 911, 116 S. Ct. 1657.  
In the instant case, the inference drawn by the judge was unreasonable and manifestly erroneous.  Consistent with the directions of 
Ornelas
, we find that defendant did not consent to a search of the trunk.

Further, the record shows that defendant continued to state that he did not want the officer to search the trunk.  Once the trunk was opened, he stated, "I thought I told you I didn't want you to look through my personal items."  When the officer tried to open the compartment inside the guitar case, defendant clasped his hand on top of the lid to prevent the officer from opening the lid.  Whereas the court determined this action to be a withdrawal of consent, we find that consent to search the trunk and the items contained therein was never given.  Defendant's actions were consistent with a denial of consent to search.

We also find troubling the court's unreasonable expectations of defendant and the efforts made at trying to rephrase how defendant could have said "No."  The court stated:

"I thought we had an idealistic Fourth Amendment defendant here when he said, 'No, I don't want you to,' 
but I think the 'No' is as to the trunk
, but I think he wasn't concerned about privacy, and he wasn't -- he may have been concerned about his search.  If he was, there's just a slight difference in the terminology."  (Emphasis added.)

Further on, the court stated:

"And then the question comes down whether or not he consented to the box within the guitar case.  Had he said when the trunk was opened, 'Go ahead and search, but leave my guitar alone,' 'Go ahead and search, but don't open that case,' anything like that, that would have indicated -- 

Whatever his reasons are, I thought he would be a little more forthright on the stand, but maybe he hasn't studied his -- didn't study his civics quite hard enough.  He could have said on the stand today, 'Yes, there was cannabis in there, and I didn't want him to get it.'  It's not the natural thing to do, however."

We find the court's reasoning to be erroneous.  A "No" means literally that.  There are no requirements for a defendant to couch his denial of consent in anything but a simple statement saying "No." 

Reasonable Suspicion

Having found that defendant did not give his consent to search the trunk, we next determine if the warrantless search of the trunk was based on articulable facts that the officer's safety or the safety of others was in danger.  The mere fact that a person is stopped for a traffic violation does not afford a reasonable basis for believing that the person is armed and dangerous.  
People v. Day
, 202 Ill. App. 3d 536, 560 N.E.2d 482 (1990).  However, when an officer has proper­ly stopped an individual and reasonably believes, based on specific and articulable facts, that his safety or the safety of others is in danger, then he may conduct a limited search of an individual for weapons.  
People v. Froio
, 198 Ill. App. 3d 116, 555 N.E.2d 770 (1990).  The sole purpose of the search is to protect the officer, not to gather evidence.  
People v. Galvin
, 127 Ill. 2d 153, 535 N.E.2d 837 (1989); 
People v. Morales
, 221 Ill. App. 3d 13, 581 N.E.2d 730 (1991).  The scope of the search must be a limited intrusion designed to discover instruments endangering the officer.  
People v. Kantowski
, 98 Ill. 2d 75, 455 N.E.2d 1379 (1983).  The search may extend beyond the individual's person to the area within his immediate control and from which he might gain access to a weapon.  
Froio
, 198 Ill. App. 3d 116, 555 N.E.2d 770.

In the instant case, the officer patted down the defendant immediately after having pulled him over.  A thorough search of the interior of the car revealed nothing suspicious and provided no basis for the officer to believe that defendant was armed and dangerous.  After all, the officer had stopped defendant for a minor traffic violation--a faulty rear taillight.  The officer had not stopped the defendant based on a belief that he had committed a dangerous felony, nor did the officer's radio check on the defendant reveal that he was a convicted felon or that any warrants were out for his arrest.  The trial court agreed that upon completing the search of the interior of the car there was no reason for the officer to search the trunk.  The court stated:

"As for the passenger area, I don't have any question but [t]hat there was a consent.  Now, the officer could have stopped right there, I realize, and -- and he didn't, and they usually don't.  They usually go on and search the trunk, which makes sense generally, especially if they find something else, but 
that wasn't the case here
." (Emphasis added.)

Having found that the officer had no reason to search the trunk, the court should have ruled that the search of the trunk was improper and in violation of defendant's rights.  An officer's authority to investigate a traffic violation may not become a subterfuge in order to obtain other evidence merely based on the officer's suspicion.  
Stewart
, 242 Ill. App. 3d 599, 610 N.E.2d 197; 
People v. Koutsakis
, 272 Ill. App. 3d 159, 649 N.E.2d 605 (1995).  This is even more true if there are no articulable suspicions to search the trunk, as was the case here.

As cited earlier, case law is clear that the sole purpose of the search is to protect the officer and not to gather evidence.  
Galvin
, 127 Ill. 2d 153, 535 N.E.2d 837; 
Morales
, 221 Ill. App. 3d 13, 581 N.E.2d 730.  The officer's safety was clearly not an issue during the search of the interior of the car and did not justify a search of the trunk.  Any weapons that might have been contained in the trunk and in the compartment of the guitar case were not within the immediate control of defendant.  While defendant was stopped for the taillight violation, the compartment was in a closed guitar case in a closed trunk.  The car keys had remained in the ignition and defendant had made no attempt to remove them to unlock the trunk.  Having found no suspicious or dangerous evidence after a thorough search of the interior of the car, the officer's search of the trunk was a fishing expedition and exceeded the scope of his authority
.

We find that the officer's search of the trunk was conducted absent valid consent.  Further, we find no articulable facts justifying the search of the trunk
.  Based on our 
review of the evidence produced at the hearing on the motion to suppress, and following the dictates of 
Ornelas
 to defer to the trial court's determination of factual matters unless they are clearly erroneous, we conclude that the court committed reversible error when it admitted evidence obtained in violation of defendant's constitutional rights against illegal search and seizure.

For the foregoing reasons, we reverse the trial judge's ruling denying the defendant's motion to suppress.  Because the State cannot prevail on remand without the evidence that we have held should have been suppressed, we also reverse his conviction and sentence outright.  
People v. Evans
, 259 Ill. App. 3d 650,  631 N.E.2d 872 (1994).  The remaining issues raised by the defendant are rendered moot by our decision.  

Reversed.

MICHELA, J., concurs.

PRESIDING JUSTICE LYTTON, specially concurring:

I agree with all of the majority's conclusions.  I believe, however, that its analysis of the "consent" issue could be more succinctly stated.  It is sufficient to say that consent to a search is not given when the defendant does nothing more than tell the officer how to remove the keys from the car.  The defendant's clear refusal to consent to a search was overridden by the officer, leading to an illegal search.  The rest of the analysis is surplusage and unnecessary to this decision.